## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL DEEP,              )
          Petitioner,    )
                        )
vs.                       )     Civil Action No. 14-831
                        )     Magistrate Judge Maureen P. Kelly
TREVOR WINGARD; ATTORNEY   )
GENERAL OF THE STATE OF     )
PENNSYLVANIA,             )
          Respondents.  )

### OPINION AND ORDER

Michael Deep ("Petitioner"), has filed this pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 1, seeking to attack his state court convictions for two counts each of sexual assault, endangering the welfare of children, and corruption of minors related to his abuse of his minor step-daughter.

For the reasons that follow, the Petition will be denied because none of the five grounds for relief merits the grant of federal habeas relief. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

## I. FACTUAL BACKGROUND

The Pennsylvania Superior Court in a Memorandum, dated September 13, 2013, recounted the factual history of the case as follows:

> On August 7, 2005, K.D. arrived home and discovered her husband, [Appellant], sexually assaulting her daughter ([Appellant]'s step-daughter), H.D. (d.o.b. 4/14/89). H.D. asserted that [Appellant] had been sexually assaulting her since the age of 10. Police subsequently arrested [Appellant] and charged him with 87 counts each of sexual assault and corruption of minors. Police also charged [Appellant] with 87 counts each of statutory sexual assault, involuntary deviate sexual intercourse (victim less than 16 years of age), rape by forcible compulsion, aggravated sexual assault, and endangering the welfare of children. At the

preliminary hearing, the Commonwealth dismissed all but six counts of each statutory violation set forth above.

Com. v. Deep, No. 966 WDA 2012, 2013 WL 11256556 at *1 (Pa. Super. Sept. 13, 2013), (slip op. at 1 – 2, attached hereto as Appendix 1) (footnotes omitted) (quoting Com. v. Deep, 737 WDA 2007, slip op. at 1 (Pa. Super. April 15, 2009)).[1]

At the Petitioner's trial in October 2006, K.D., Petitioner's then wife and biological mother of the victim, testified that she had been married to Petitioner since 1992. She further testified that she and Petitioner had two biological children together and that she also had two biological children from a previous marriage including, H.D., the victim in this case. Petitioner's wife testified that on the night that she discovered Petitioner sexually assaulting H.D., she told Petitioner that she was going over to her son's house to bring some food items for him as he was preparing to leave for school. She testified that she informed everyone at home of her intentions, and that Petitioner told her that she should go to the grocery store and buy her son some groceries in addition to the food. Petitioner's wife did not go to the grocery store but went directly to her son's home and dropped off the food and immediately (within 10 to 15 minutes) returned to the home that she shared with Petitioner and the other three children. When she returned home, Petitioner's wife went upstairs to the bedroom she shared with Petitioner, and the bedroom door was closed. She then testified as follows on direct examination by the prosecutor:

> Q  You then said you opened the door?
>
> A  Yes.
>
> Q  Was that door locked in any way?

---

[1] We note that Respondents did not attach any copies of the state court record to their Answer but only caused the original state court record to be delivered to the Clerk of Courts.

A No.

Q So what happens when you open the door? Can you explain to the jury what happens next?

A When I opened the door, I could see in the mirror my daughter was crossways on my bed on her hands and knees. Her ankles were hanging off the bed and her pants and her underwear were down around her ankles. My husband was standing -- Michael was standing behind her with his shorts and underwear down also.

Q You said you saw this through the reflection in the mirror.

A Yeah. I saw it through the reflection before I turned and looked, but the first time I saw it was in the mirror, yes.

Q You're indicating that after you see this reflection in the mirror you turn and look?

A For a second.

Q What do you do next?

A I turned back around and started screaming, "Oh, my God. Oh, my God." I was just screaming and found myself outside the doorway into the hall again, and when I turned back around towards the bedroom, Michael grabbed me by my arms and pushed me back into my daughter's room, [H.D.'s] room, which is across the hall.

....

Q You indicated you started screaming and as you go out in the hall somehow Michael is there?

A Yeah. I went out into the hall. I was screaming, "Oh, my God. [sic] "Oh, my God." And I turned back around and he caught me by my arms and pushed me back into my daughter [H.D.'s] room and said, you know, "What's up?" Or, [sic] "What's the matter?"

Q What did you do as a result of him saying what's up?

A I started screaming at him.

Q What did you scream?

A  I screamed, "You bastard, you're fucking my daughter."

Q  Did he respond to you saying that?

A  His head dropped and his face turned white, and he said, "You have to let me explain," and I reached out and I grabbed his penis through his shorts.

Q  What made you reach out and grab him?

A  I don't know.  I could see in his shorts that his penis was erect and I grabbed it and said, "Don't even tell me.  I don't need you to explain to me.  Don't even tell me there is nothing going on.  You've got a hard on."

Q  Did he respond?

A  That's what I said.

Q  Did he respond to your reacting this way?

A.  He just kept saying, "I'm sorry, you have to let me explain.  You have to let me explain," and I told him that there was nothing he could say, just get out, get away from us.

Trial Transcript ("T.T."), Vol. I at p. 14 line 4 to p. 16 line 18.

The victim also took the stand and testified, corroborating the foregoing evidence.

Petitioner also took the stand in his own defense.

## II. PROCEDURAL HISTORY

### A. State Court

The Pennsylvania Superior Court, in its Memorandum, dated September 27, 2016, addressing Petitioner's appeal in his fourth Post Conviction Relief Act ("PCRA") proceedings, recounted the procedural history of the case in the state courts as follows:

> On October 27, 2006, [Appellant] was convicted by a jury of two counts each of sexual assault, endangering the welfare of children, and corruption of minors relating to his abuse of his minor step-daughter. The presiding judge was Paul Pozonsky. On

4

March 22, 2007, the trial court sentenced [Appellant] to an aggregate term of not less than fourteen but not more than forty-four years of incarceration. [Appellant] filed post-sentence motions that were denied by operation of law. He filed an appeal to the Superior Court which, on April 15, 2009, affirmed the judgment of sentence. [Appellant] then sought an appeal to the Pennsylvania Supreme Court. On October 20, 2009, the Supreme Court denied review.

On August 6, 2010, [Appellant] filed his first PCRA petition, which was completed with the assistance of counsel[, i.e., Gary Graminski]. After issuing a Rule 907 notice of its intent to dismiss the petition without a hearing, *see* Pa.R.Crim.P. 907(1), the trial court formally dismissed the petition on September 27, 2010. On September 16, 2011, the Superior Court affirmed in part, vacated in part, and remanded for an evidentiary hearing on [Appellant's] claim that trial counsel was ineffective for failing to meet with him prior to trial. After remand, the PCRA court held the ordered hearing on December 19, 2011. On May 22, 2012, the trial court dismissed [Appellant's] petition. On September 13, 2013, the Superior Court affirmed the dismissal. On February 20, 2014, the Pennsylvania Supreme Court denied [Appellant's] petition for allowance of appeal.

On February 24, 2014, [Appellant] filed a *pro se* second PCRA petition. On March 18, 2014, the PCRA court issued a Rule 907 notice of its intent to dismiss [Appellant's] petition without a hearing. [Appellant] filed a response to this notice on March 31, 2014, and, on April 8, 2014, the court dismissed the petition as untimely. On July 11, 2014, [Appellant] filed a motion to file an appeal *nunc pro tunc*, which the court granted the same day. On July 31, 2014, [Appellant] filed a notice of appeal from the court's April 8, 2014 order. On August 21, 2014, while his appeal of the PCRA court's April 8, 2014 order was still pending, [Appellant] filed a third PCRA petition *pro se*. On August 29, 2014, the court dismissed Appellant's petition on the basis of ***Commonwealth v. Lark***, 746 A.2d 585, 588 (Pa. 2000). On September 17, 2014, [Appellant] discontinued his appeal of the PCRA court's April 8, 2014 order.

On September 23, 2014, [Appellant] timely appealed from the PCRA court's August 29, 2014 order dismissing his third PCRA petition on the basis of a pending appeal. The PCRA court dismissed [Appellant's] third PCRA petition pursuant to ***Lark***, ***supra*** because his prior PCRA appeal still was pending in the

Superior Court. On May 5, 2015, the Superior Court affirmed the PCRA court's dismissal.

PCRA Ct. Op. at 1 – 2.

On June 23, 2015, the court docketed Appellant's *pro se* and fourth PCRA petition. Appellant contended he was eligible for relief only under 42 Pa.C.S. § 9543(a)(2)(i), "A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Appellant's PCRA Pet., 6/23/15, at 2. Appellant attached Exhibit 1, the undated findings of the grand jury convened to review evidence of Pozonsky's misconduct during his time as a judge.

. . . .

Appellant also attached Exhibit 2, a *Pittsburgh Tribune-Review* article dated March 21, 2015, stating Pozonsky had pled guilty to theft by unlawful taking, obstruction of the administration of law, and misappropriation of entrusted property and property of government institutions on March 20, 2015, in the Court of Common Pleas of Washington County. Other attachments included Exhibit 3, a *Pittsburgh Post-Gazette* article dated December 30, 2012, discussing Pozonsky's resignation and subsequent investigation by a grand jury. . . .

On July 8, 2015, the PCRA court entered an order stating its intent to dismiss Appellant's petition without a hearing. The court dismissed the petition on July 31, 2015. On November 15, 2015, Appellant filed an application to appeal *nunc pro tunc*, attaching a Notice of Appeal mailed on August 11, 2015, which was not received by the court. The court granted the application on November 20, 2015, and filed a Pa.R.A.P. 1925(a) opinion on December 14, 2015 that incorporated its July 8, 2015 order.

Appellant raises the following three issues for our review:

I. Whether the lower court erred in dismissing Appellant's PCRA petition based on the finding that said petition was untimely, where the Appellant was procedurally barred from filing said petition until the outcome of a then-pending appeal[?]

II. Whether the lower court erred in dismissing Appellant's PCRA petition based on the finding that Appellant failed to show bias or interest in the outcome of the proceedings by former judge Paul Pozonsky[?]

III. Whether the lower court erred in dismissing Appellant's PCRA petition based on the finding that former judge Paul Pozonsky's misconduct began in 2011, long after Appellant's trial, where legal records show that said misconduct began as far back as 2004, long before Appellant's trial[?]

Appellant's Brief at 2.

Com. v. Deep, No. No. 1862 WDA 2015, 2016 WL 5418872 at *1 − 3 (Pa. Super. Sept. 27, 2016) (slip op. at 1 − 5, attached hereto as Appendix 2) (footnote omitted).

The Superior Court affirmed the denial of the fourth PCRA Petition because it was untimely filed under the relevant PCRA statute of limitations. After the Superior Court affirmed the denial of PCRA relief, Petitioner did not file a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania.[2]

### B. Federal Court

While Petitioner's second PCRA petition proceedings were pending in state court, Petitioner paid the filing fee and the instant Petition was filed on June 25, 2014. ECF No. 1. In the instant Petition, Petitioner raised the following five Grounds for Relief:

**GROUND ONE:** Trial counsel provided ineffective assistance in failing to prepare Petitioner to testify in his own defense[.]

ECF No. 1 at 5.

**GROUND TWO:** The trial court abused its discretion in dismissing the PCRA petition filed on August 6, 2010, and demonstrated prejudice, bias and disregard for the Petitioner's rights throughout the proceedings.

---

[2] The docket of the Superior Court appeal for Com. v. Deep, No. 1862 WDA 2015, is available at:

    https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=1862+WDA+2015&dnh=GSoHvwTgqaeWeygxPrTMIw%3d%3d

(Site last visited 2/19/2020).

Id. at 7.

> **GROUND THREE:** Trial counsel provided ineffective assistance by failing to investigate, failing to acquire expert testimony, failing to request a continuance, failing to request a mistrial, and failing to pursue the issue of after-discovered evidence.

Id. at 8.

> **GROUND FOUR:** Trial counsel provided ineffective assistance by failing to prepare for trial, including failing to review discovery and reports with the Petitioner and failing to prepare and call the Petitioner's girlfriend to testify on his behalf.

Id. at 10.

> **GROUND FIVE:** Trial counsel provided ineffective assistance in failing to present a meaningful defense and denying the Petitioner meaningful appellate review.

Id. at 12.

Petitioner also filed a "Supplemental Brief in Support of Petitioner's Petition for Writ of Habeas Corpus" ("Brief in Support"). ECF No. 2.

After being granted an extension of time to file an Answer, Respondents filed a Motion to Dismiss on August 14, 2014. ECF No. 10. In the Motion to Dismiss, Respondents asserted that the Petition should be dismissed without prejudice due to Petitioner having an appeal of his second PCRA Petition then pending in the Pennsylvania Superior Court. In their Motion to Dismiss, Respondents did not provide the docket number of the pending appeal in the Pennsylvania Superior Court upon which they based their request for dismissal. However, it appeared that the pending appeal that they were referring to was Com. v. Deep, No. 1280 WDA 2014 (Pa. Super. Notice of Appeal filed Aug. 8, 2014) (hereinafter "the Second PCRA

Appeal").[3]  See ECF No. 10 at ¶ 3n (asserting that Petitioner's "appeal is pending to date" *i.e.*, pending as of August 14, 2014, when the Respondents' Motion to Dismiss was filed). However, the Court took judicial notice of the fact that the Second PCRA Appeal ceased to be pending as of September 17, 2014, when Petitioner filed a praecipe to discontinue.

Even though the Second PCRA Appeal, upon which the Respondents' Motion to Dismiss was based, was no longer pending at the time we considered the Motion to Dismiss, we took judicial notice of the fact that the Petitioner filed yet another appeal concerning the same conviction that was both the subject of the Second PCRA Appeal and the subject of the instant Petition.  The Third PCRA Appeal is Com. v. Deep, No. 2025 WDA 2014 (Pa. Super. Notice of Appeal filed Dec. 15, 2014) (hereinafter, the "Third PCRA Appeal").[4]  At the time we came to rule upon the Motion to Dismiss on March 4, 2015, the Third PCRA Appeal was then pending before the Pennsylvania Superior Court.  ECF No. 13.

Petitioner filed a Response to the Respondents' Motion to Dismiss, opposing dismissal of the Petition.  ECF No. 11.  Subsequently, Petitioner also filed a "Motion to Postpone Habeas Corpus Proceedings Until Exhaustion of Newly Discovered Evidence Claims in State Court" (the

---

[3]  The docket of the Superior Court for Com. v. Deep, No. 1280 WDA 2014, is available at:

> https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=2025+WDA+2014&dnh=ys3wERsQfYFBZZmdLmIplw%3d%3d

(site last visited 2/19/2020).

[4]  The docket of the Superior Court for Com v. Deep, No. 2025 WDA 2014, is available at:

> https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=2025+WDA+2014&dnh=ys3wERsQfYFBZZmdLmIplw%3d%3d

(site last visited 2/19/2020).

"Motion to Stay"). ECF No. 12. In the Motion to Stay, Petitioner argued that he had a currently pending appeal in the Pennsylvania Superior Court, *i.e.*, the Third PCRA Appeal, and he wished to exhaust his state court remedies. Even though the Court ordered Respondents to file a response to Petitioner's Motion to Stay by February 18, 2015, no such response was filed. Thereafter, the Court denied Respondents' Motion to Dismiss, because the Court was concerned with the running of the AEDPA statute of limitations. ECF No. 13. In that same order, denying the Motion to Dismiss, we granted Petitioner's Motion to Stay these habeas proceedings, pending his exhaustion of state court remedies and we directed the parties to inform this Court within 45 days of those state court remedies having been exhausted.

In May 2015, Petitioner filed a Motion to Continue Habeas Corpus proceedings. ECF No. 14. The Court denied the Motion to Continue but directed Petitioner to indicate whether he wanted to have the stay in this case lifted or not. ECF No. 17. By way of response, Petitioner filed a Motion to Continue the Stay because he indicated therein that he had filed yet another PCRA Petition, his fourth, raising a newly discovered evidence claim concerning former Judge Pozonsky's criminal activity. ECF No. 16. The Court granted Petitioner's Motion to Continue the Stay and ordered the parties to inform this Court within 45 days after the PCRA court disposed of Petitioner's then pending fourth PCRA Petition. ECF No. 17.

In October 2016, Petitioner filed a Motion to Lift the Stay indicating that he had exhausted his state court remedies. ECF No. 18. The Court granted the Motion to Lift the Stay and ordered Petitioner to file one amended consolidated habeas petition that contained all of the claims which he wished to raise and to do so no later than March 17, 2017. ECF No. 19. The Court warned Petitioner that failure to file the amended habeas petition would result in the Court treating the then pending Petition, ECF No. 1, as the effective petition. Petitioner never filed an

amended petition and so, the Court ordered Respondents to file an Answer to the original Petition, ECF No. 1, and indicated that it would be treated as the operative Petition. ECF No. 20. After being granted three extensions of time, ECF Nos. 22, 24 and 28, Respondents filed their Answer, denying that Petitioner was entitled to any relief. ECF No. 29. Respondents also caused the original state court record to be transmitted to this Court. ECF No. 30.

All parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge. ECF Nos. 7 and 9.

## III. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme

Court of the United States." Id. at 404-05 (emphasis deleted). A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

In addition, we look to the United States Supreme Court holdings under the AEDPA analysis as "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, 537 F.3d 102, 106–07 (2d Cir. 2008) (citing Carey v. Musladin, 549 U.S. 70 (2006)). The United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pennsylvania Dept. of Corrections, 834 F.3d 263, 368 (3d Cir. 2016) (en banc) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the United States Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. Moreno v. Ferguson, CIV. A. No. 17-1412, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019), appeal filed, 19-3777 (3d Cir. Dec. 6, 2019). This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions. Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, 2:07-CV-00021, 2010 WL 3636164, at *10 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States.*' 28 U.S.C. § 2254(d)(1) (emphasis added). Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

The United States Court of Appeals for the Third Circuit has recognized the significance of the deference under AEDPA that federal habeas courts owe to state courts' decisions on the merits of federal legal claims raised by state prisoners in federal habeas proceedings and the Third Circuit emphasized how heavy is the burden that petitioners bear in federal habeas proceedings. The Third Circuit explained that: "[w]e also defer to state courts on issues of law:

We must uphold their decisions of law unless they are 'contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' So on federal habeas, 'even 'clear error' will not suffice.' Instead, the state court must be wrong 'beyond any possibility for fairminded disagreement.'" Orie v. Sec. Pa. Dept. of Corrections, 940 F. 3d 845, 850 (3d Cir. 2019) (citations and some internal quotations omitted).

## IV. DISCUSSION

### A. Ground One Does Not Merit Relief.

In Ground One of the Petition, Petitioner claims that his trial counsel provided ineffective assistance by failing to properly prepare him to testify at trial in his own defense. ECF No. 1 at 5.

The PCRA trial court originally denied this claim without conducting a hearing, however upon appeal, the Superior Court vacated and remanded for the PCRA trial court to conduct a hearing on this claim. Com v. Deep, No. 1592 WDA 2010 (Pa. Super. Sept. 16, 2011) (slip op. attached hereto as Appendix 3). After remand, the PCRA trial court conducted a hearing at which Petitioner's trial counsel testified as did Petitioner and his girlfriend. Thereafter, the PCRA Court denied relief on this claim.

Petitioner appealed and the Superior Court addressed this claim on the merits. In affirming the denial of PCRA relief on this claim, the Superior Court reasoned as follows:

> The PCRA court rejected Appellant's IAC claim based upon trial counsel's alleged failure adequately to prepare Appellant to testify at trial. The court reasoned as follows:
>
> > [Appellant's] argument that trial counsel failed to meet with him and sufficiently prepare for trial was refuted by [trial counsel's] credible testimony at the PCRA hearing. As [Appellant's] Memorandum in Support of Petition for Post Conviction Relief aptly states:

14

> [Trial counsel] testified that he met with
> [Appellant] at least three or four times to prepare
> for trial and to review the discovery materials, and
> [Appellant] corroborated this testimony. Notes of
> Testimony, December 19, 2011, pp. 28–29
> (hereafter "N.T."). [Trial counsel] also testified that
> he met with [Appellant] to prepare him for his trial
> testimony, albeit briefly. N.T., pp. 7–8. [Trial
> counsel] explained that for strategic reasons he did
> not spend a long time preparing [Appellant] to
> testify, to avoid the appearance that [Appellant] was
> "coached." N.T., p. 23. [Trial counsel] credibly
> testified that was his trial strategy regarding
> [Appellant's] testimony to the jury.

PCRA Court Opinion, May 22, 2012, at 2 (quoting Defendant's Memorandum in
Support of Petition for Post Conviction Relief at 4).

Appellant's argument consists of a recitation of alleged contradictions and
expressions of uncertainty by trial counsel during the PCRA hearing, ostensibly
rendering any reliance on his testimony unjust, followed by bald allegations to the
effect that Appellant and Girlfriend were the more credible witnesses. Brief for
Appellant at 14–17. Despite trial counsel's testimony to the contrary, Appellant
maintains that counsel did not meet with Appellant to go over his testimony in the
several days before trial. Notably, Appellant does not dispute that the PCRA
court's findings of fact were based upon the actual testimony of trial counsel. As
noted above, we are bound by the PCRA court's findings of fact to the extent they
are supported by the record. *Garcia*, 23 A.3d at 1061. Consequently, we must
decline Appellant's invitation to reject the PCRA court's conclusions.

Moreover, Appellant fails to plead and prove that, even if trial counsel did
not meet with Appellant in an arbitrarily drawn four-day window before trial, the
earlier meetings that the PCRA court found to have occurred were insufficient
adequately to prepare Appellant for trial. As well, Appellant does not cite a single
aspect of his own testimony that might have differed given a greater degree of
preparation. Excluding assertions in support of issues that we have deemed
waived, Appellant's entire argument in support of the prejudice arising from any
deficiencies in preparing him as a witness is as follows:

> I believe that it is safe to say that in a case where a defendant had
> ... adequately prepare[d] him for testimony in his own defense
> would have made a difference. Appellant was not convicted on all
> charges as it is. Could he have been acquitted on the remaining
> charges? Had [trial counsel] given more than a cursory effort,

would [Appellant] have been able to testify more effectively, knowing what had been done in his behalf, why counsel made certain decisions whether for pragmatism or for strategy, and had [he] received some training in what to expect, how better to effectively express himself and how to deal with potential problems on cross-examination[?] Isn't it more likely that he would have been able to give his best effort?

Brief for Appellant at 18 (errata in original). We submit that only Appellant can answer his own rhetorical questions-and indeed, that the governing standard imposes upon him the burden to do so, by reference to the record and actual evidence rather than bald allegations of prejudice. Having submitted to this Court questions rather than answers, Appellant has failed to establish a basis for relief on this claim.

Com v. Deep, No. 966 WDA 2012, slip op. at 8 - 11, Appendix 1.

### 1. The Superior Court's decision is not contrary to Strickland.

In addressing the claim of trial counsel's alleged ineffectiveness raised in Ground One, both the PCRA trial court and the Superior Court, applied the state court test for ineffective assistance of counsel ultimately derived from Com. v. Pierce, 527 A.2d 973 (Pa. 1987) (the "Pierce standard"). Com v. Deep, No. 966 WDA 2012, slip op. at 8, Appendix 1 (quoting Com. v. Reed, 971 A.2d 1216, 1221 (Pa. 2005) (citing Com. v. Pierce, 527 A.2d 973, 975 (Pa. 1987)).

The Pierce standard has been found to be materially identical to the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland in the sense of being a wrong rule of law. Hence, Petitioner cannot show that the Superior Court's disposition of Ground One is contrary to United States Supreme Court precedent in the first sense of applying a wrong rule of law. Nor has Petitioner shown that the Superior Court's disposition is contrary to United States Supreme Court precedent in the second sense, i.e., he fails to point to a case decided by the United States Supreme Court where the facts are

indistinguishable from his case but where the state court reached an outcome different from the outcome reached by the United States Supreme Court.  Owsley v. Bowersox, 234 F.3d at 1057; Ross v. Atty. Gen. of State of Pennsylvania, Civ. A. No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008); West v. Foster, 2010 WL 3636164, at *10.

### 2. The Superior Court did not unreasonably apply Strickland.

Moreover, Petitioner has failed to show that the Superior Court's decision, was an unreasonable application of United States Supreme Court precedent on ineffective assistance of counsel.  The only United States Supreme Court precedent that Petitioner cites to in regards to Ground One is to Strickland itself.  ECF No. 22 at 9 – 10.

In Strickland, the United States Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.

First, the defendant must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see also Williams v. Taylor, 529 U.S. at 390-91.  In reviewing counsel's actions, the court presumes that counsel was effective.  Strickland, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions.  Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained.").  In light of the foregoing, the United States Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694; <u>see also</u> <u>Williams</u>, 529 U.S. at 391.

Moreover, because the state courts addressed Petitioner's claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA as to those claims, which results in a doubly deferential standard as explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

<u>Premo v. Moore</u>, 562 U.S. 115, 122 - 123 (2011) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011)). <u>Accord</u> <u>Grant v. Lockett</u>, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts

must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'"), rejected on other grounds by, Dennis, 834 F.3d at 293.

The Superior Court essentially found that Petitioner failed to carry his burden at the PCRA hearing to establish deficient performance on the part of his trial counsel because the PCRA trial court credited the testimony of the trial counsel with respect to when, how often and for roughly what length of time he met with Petitioner to prepare Petitioner for trial. And furthermore, the PCRA court discredited the testimony of the Petitioner and his girlfriend. This was wholly within the province of the PCRA trial court to do so.

In addition, the Superior Court found that Petitioner also failed to establish prejudice with respect to trial counsel's alleged failure to better prepare Petitioner for trial.

Viewing the Superior Court's disposition of this claim through the doubly deferential lens of the AEDPA, we have no hesitancy in concluding that Petitioner fails to carry his burden herein to persuade this Court that Superior Court's disposition was unreasonable, yet alone even incorrect. The Court is at a loss to imagine what amount of preparation could have adequately surmounted the dramatic testimony of Petitioner's wife upon discovering him and his step-daughter in the compromising position upon her unexpected return to home. Not only was the Superior Court not unreasonable in its disposition of this claim, we find it was entirely correct in determining that Petitioner failed to establish prejudice.

**B. Ground Two – Does Not Set Forth a Recognized Ground for Relief.**

In Ground Two, Petitioner complains about the PCRA proceeding involving his first PCRA petition filed on August 6, 2010. ECF No. 1 at 7. In this regard, Petitioner points out that his PCRA trial judge, Judge Pozonsky, was subsequently charged with crimes in connection with theft of cocaine from an evidence locker. ECF No. 2 at 16 – 17.

No matter what deficiencies may have occurred during Petitioner's PCRA proceedings, as we have previously explained, such errors during the course of the PCRA proceedings simply cannot provide a basis for federal habeas corpus relief. This Court has previously held that:

> In Ground Two, Petitioner complains about errors in the PCRA proceedings. However, the clear rule of law in the Third Circuit is that errors during the course of the PCRA proceedings do not provide a basis for relief in federal habeas proceedings. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.... Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.' "); Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("alleged errors in collateral proceedings ... are not a proper basis for habeas relief from the original conviction."). Accordingly, Ground Two simply does not afford a basis for the granting of a writ of habeas corpus.

Ainsworth v. Atty. Gen. of Pennsylvania, CIV.A. No. 16-1354, 2018 WL 2729266, at *6 (W.D. Pa. May 18, 2018), report and recommendation adopted, 2018 WL 2725437 (W.D. Pa. June 6, 2018). Accordingly, Ground Two fails to afford Petitioner a ground for any relief in these federal habeas proceedings.

### C. Ground Three Was Procedurally Defaulted.

Petitioner asserts in Ground Three that his trial counsel was ineffective for many reasons.[5] ECF No. 1 at 8. Petitioner concedes however, that he procedurally defaulted this

---

[5] Specifically, Petitioner complains that his trial counsel was ineffective for the following reasons:

1. Counsel failed to make reasonable investigation into matters brought to his attention by the Petitioner; and

2. Counsel failed to utilize compulsory process in order to acquire the testimony of Dr.
   (... footnote continued)

ground of ineffectiveness and the seven sub-issues. ECF No. 2 at 7. Specifically, Petitioner

notes that "[t]hese issues were raised in the [first] PCRA court, but were procedurally defaulted

by PCRA counsel's failure to raise them on appeal following the PCRA court's decision

dismissing the claims." Id. at 17. We agree that Petitioner procedurally defaulted Ground Three

and its sub-parts because although PCRA trial counsel did raise these issues in the first PCRA

Petition, Petitioner failed to raise them in his Concise Statement of Matters Complained of on

Appeal. See Com. v. Deep, No. 2025 WDA 2014, slip op. at 4 – 7 (Pa. Super. May 5, 2015),

attached hereto as Appendix 4 (declining to review sub-issues 2, 3, 4 and 5, based on

independent and adequate state law procedural rule). Petitioner procedurally defaulted sub-

grounds 1, 6, and 7 because, although he raised them in his first PCRA Petition, he did not raise

---

Brandstetter for the purposes of trial; and

3. Counsel failed to request a continuance when Dr. Brandstetter could not testify; and

4. Counsel failed to request that the Petitioner's expert be able to examine the alleged victim as requested by the Petitioner; and

5. Counsel failed to file a timely objection, requesting a mistrial when informed that the alleged victim had a sexually transmitted disease, specifically HPV; and

6. Counsel failed to investigate the matter of the existence and origin of the sexually transmitted disease contracted by the alleged victim; and

7. Counsel failed to pursue the issue of after-discovered-evidence concerning Andrea Linton's [Petitioner's girlfriend at the time of trial] condition vis-a-vis sexually transmitted disease.

ECF No. 2 at 17.

them in his Rule 1925(b) statement and or in his Statement of Questions presented section of his brief to the Superior Court. Com. v. Deep, 966 WDA 2012, slip op. at 4 – 6, Appendix 1.

Petitioner claims however that he has "cause" to excuse this procedural default in the form the ineffective assistance of his PCRA counsel upon appeal pursuant to Martinez v. Ryan, 566 U.S. 1 (2012). ECF No. 2 at 17. Unfortunately, Petitioner is mistaken on the law.

As this Court has previously explained:

> The decision of the United States Supreme Court in Martinez v. Ryan created a sea change in the doctrine of procedural default, holding for the first time that a claim of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness. However, the Supreme Court in Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013) explained that Martinez only permits a federal habeas court to find "cause" based on post conviction counsel's ineffectiveness and "thereby excus[e] a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

Taylor v. Pa., CIV. A. 15-1532, 2018 WL 446669, at *9 (W.D. Pa. Jan. 16, 2018). However, Martinez only serves as cause to excuse the procedural default of a trial counsel claim of ineffectiveness based only upon the ineffectiveness of PCRA trial counsel and not by any ineffectiveness engaged in by PCRA appellate counsel. As Petitioner's PCRA trial counsel raised these issues in the first PCRA Petition, he was not ineffective and there is no cause under Martinez to excuse Petitioner's procedural default. Norris v. Brooks, 794 F.3d 401, 405 (3d Cir. 2015) ("Martinez made very clear that its exception to the general rule of Coleman applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals. 132 S.Ct. at 1316, 1320; see also Arnold v. Dormire, 675 F.3d 1082, 1087 (8th

Cir. 2012). Because Norris's claim of ineffective assistance of trial counsel was presented on initial collateral review and only waived on collateral appeal, we hold that *Martinez* does not justify relief...").[6]

Furthermore, on the record before this Court, Petitioner has not established a miscarriage of justice so as to excuse his procedural default of this claim.

---

[6] This rule that <u>Martinez</u> does not apply to claims of ineffective assistance of PCRA counsel acting in an appellate capacity has been uniformly applied in this Circuit. We have held in prior cases, which attempt to raise <u>Martinez</u> so as to excuse procedural default based on the PCRA appellate counsel's behavior, that such a claim does not fall within the narrow <u>Martinez</u> exception:

> Instead, we find a procedural default based on what PCRA counsel did at the appellate level, i.e., raise only the two claims on appeal addressed above and abandon the other claims. *Martinez* does not provide that ineffective assistance of PCRA counsel at the appellate level of post conviction proceedings can serve as cause to excuse a procedural default. The Supreme Court in *Martinez* expressly stated that "[t]he holding in this case does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings,* second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. *It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial[.]*" 132 S.Ct. at 1320 (emphasis added) (citing *Coleman,* 501 U.S. at 754; *Carrier,* 477 U.S. at 488). Therefore, *"Martinez* offers no support ... for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause." *Arnold v. Dormire,* 675 F.3d 1082 (8th Cir. 2012) (declining to extend *Martinez* to claims of ineffective assistance in appeals from initial-review collateral proceedings). *Accord Johnson v. Warden of Broad River Correctional Inst.,* —— F. App'x ——, 2013 WL 856731, at *1 (4th Cir. 2013); *Ramos v. Collins,* NO. CIV.A. 13–433, 2013 WL 5429267, at *4 (E.D. Pa. April 23, 2013).

<u>Lenhart v. Rozum,</u> CIV.A. 10-218J, 2014 WL 807995, at *16 (W.D. Pa. Feb. 28, 2014). <u>Accord</u> <u>Ingram v. Sauers,</u> 1:12-CV-1900, 2015 WL 1608501, at *14 (M.D. Pa. Apr. 10, 2015); <u>Shiloh v. Wilkes,</u> 1:14-CV-860, 2015 WL 5342704, at *10 (M.D. Pa. Sept. 14, 2015) ("Thus, to the extent Shiloh contends that PCRA counsel's ineffectiveness should excuse her procedural default pursuant to *Martinez,* she 'is provided no relief because PCRA counsel advanced this claim in h[er] initial-review proceedings before the PCRA trial court.' *Glenn v. Wynder,* No. CIV.A. 06–513, 2012 WL 4107827, at *45 (W.D. Pa. Sept. 19, 2012) *aff'd,* 743 F.3d 402 (3d Cir. 2014).").

Accordingly, Ground Three does not serve as a basis for federal habeas relief.

## D. Ground Four Was Procedurally Defaulted.

In Ground Four, Petitioner asserts that his trial counsel was ineffective for a number of reasons.[7] ECF No. 1 at 10. However, Petitioner again concedes that Ground Four is procedurally defaulted also because PCRA appellate counsel failed to include these claims in Petitioner's Rule 1925(b) Statement of Errors Complained of on Appeal even though he did include the claims in the appellate brief. ECF No. 2 at 21 ("These issues although litigated in the Petitioner's appellate brief to the Superior Court, were deemed waived due to PCRA/Appellate attorney, Greg Graminski's failure to properly raise them in the 1925(b) Concise Statement of Matters Complained of On Appeal."). We agree that Petitioner procedurally defaulted these claims. See Com. v. Deep, No. 966 WDA 2012, slip op. at 5 – 6, Appendix 1 (declining to

---

[7] Specifically, Petitioner claims ineffectiveness of trial counsel on the basis of the following:

> 1. Trial counsel met with Petitioner prior to the commencement of trial briefly to discuss potential witnesses, but did not review discovery, expert or detective reports with Petitioner; and
>
> 2. Trial counsel failed to call Girlfriend as a character witness, among others, who were available and willing to testify and failed to explain why these witnesses would not be used; and
>
> 3. Trial counsel also specifically refused to prepare Girlfriend to testify on Petitioner's behalf even though she was ready, willing and able to do so, and would have testified as to Petitioner's character and on the issue of a sexually transmitted disease.

ECF No. 2 at 21.

24

consider issues because "they were neither stated nor fairly suggested by Appellant's rule 1925(b) statement. Similarly, any suggestion of these issues is absent from his statement of questions involved in his brief to this Court. Accordingly, these sub-issues are waived." Id. at 6).

Petitioner again invokes Martinez in an attempt to establish cause to excuse this procedural default of trial counsel's alleged ineffectiveness but, just as he could not do so with respect to Ground Three, he cannot do so with respect to Ground Four. A bright line establishing when PCRA counsel ceases to be acting as PCRA trial counsel and when he/she begins to act as PCRA appellate counsel needs to be established, so that we can clearly know whether Martinez applies or not. We find that "initial collateral review proceedings" cease at the moment that the PCRA court dismisses the PCRA petition and actions taken thereafter, such as the filing or failing to file a notice of appeal or actions in connection with the filing of a statement of matters complained of on appeal all constitute actions of PCRA counsel acting in an appellate capacity and, therefore, fall outside of the Martinez exception. See, e.g., McKinnon v. Harlow, CIV.A. 12-6308, 2015 WL 400471, at *6 (E.D. Pa. Jan. 28, 2015) ("*Martinez* does not apply to McKinnon's case. The default at issue here, namely the failure to describe with particularity the various deficiencies of trial counsel concerning prosecutorial misconduct, did not occur during an 'initial-review collateral proceeding.' Rather, a 1925(b) Statement is provided only as part of the appeal process following the initial-review collateral proceeding under the PCRA and, consequently, is explicitly outside the ambit of the *Martinez* exception. Pa. R.A.P. 1925(b); *Martinez,* 132 S.Ct. at 1318.... McKinnon's default here cannot be excused under *Martinez.*"). Accordingly, the ineffectiveness of PCRA appellate counsel herein cannot serve as cause to excuse the procedural default of Ground Four.

Furthermore, based on the record before this Court, Petitioner has not established a miscarriage of justice as is his burden. Thus, having procedurally defaulted Ground Four, and failing to show cause to excuse such default or a miscarriage of justice, Petitioner is not entitled to federal habeas relief.

### E. Ground Five Does Not Merit Petitioner Relief.

Lastly, Petitioner asserts in Ground Five that his trial counsel was ineffective for failing to present a meaningful defense and denying Petitioner meaningful appellate review, ECF No. 1 at 12, based on the following sub-claims:

1. Trial counsel provided ineffective assistance in his failure to object or attempt to suppress Dr. Squires' testimony.

2. Trial counsel was ineffective in failing to object to the *Brady* violation where evidence regarding Dr. Squires' examination was willfully witheld [sic] from the defense.

3. Trial counsel provided ineffective assistance of counsel in his failure to request a mistrial, curative instruction or removal of a member of the jury who had fallen asleep, was disruptive, and was discussing the case with other jurors.

4. Trial counsel provided ineffective assistance in failing to request a bill of particulars and, therefore, failed to prepare a meaningful defense where the Defendant had alibi defenses regarding several of the alleged offenses.

5. Trial counsel provided ineffective assistance by prematurely filing the Defendant's 1925(b) Statement of Matters Complained of on Appeal prior to disposition of post-sentence motions, thereby barring the Defendant's appellate attorney from raising meritorious issues on

appeal, including, inter alia:

    a. whether the trial court erred in failing to grant the Defendant a new trial due to after-discovered evidence;

    b. whether the trial court erred in failing to grant a new trial due to prosecutorial misconduct;

    c. whether the trial court erred in failing to grant a new trial based on the Commonwealth's failure to comply with Pennsylvania's Rules of Criminal Procedure 573; and whether the trial court abused its discretion in sentencing the Defendant to consecuive [sic] sentences in the aggravated range of the sentencing guidelines.

ECF No. 2 at 24. Petitioner asserts that because "[t]hese issues were never raised in the Petitioner's first PCRA petition. PCRA counsel provided ineffective assistance in his failure to raise them. Pursuant to ***Martinez v. Ryan***, __ U.S. __, 132 S. Ct. 1309 (2012)," the procedural default of the claims should be excused. ECF No. 2 at 24.

### 1. Petitioner fails to show PCRA counsel was ineffective.

We initially note that Petitioner is simply wrong as a matter of historical fact with respect to the claim that PCRA counsel did not raise several of the issues of trial counsel's ineffectiveness, i.e., sub-issue 4 above. Petitioner is wrong that his PCRA counsel failed to raise the issue of trial counsel's alleged ineffectiveness for failing to request a bill of particulars. PCRA trial counsel did raise such a claim in the first PCRA petition. In fact, this claim was raised by PCRA trial counsel and rejected on the merits by both the PCRA trial court, in its January 4, 2011 Opinion Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) slip op. at 5-7 (attached hereto as Appendix 5) and the Superior Court. Com. v. Deep, No. 1592 WDA

2010, slip op. at 5-7, Appendix 3. Petitioner fails to argue that the disposition by the state courts of this particular issue of trial counsel's alleged ineffectiveness was contrary to or an unreasonable application of United States Supreme Court precedent. As such, this claim cannot afford a basis for relief in these federal habeas proceedings.

There are several additional problems with this ground for relief. As previously noted, under Martinez, Petitioner bears the burden of establishing the ineffectiveness of PCRA trial counsel in order to seek to excuse the procedural default of a claim of trial counsel's ineffectiveness. The standard for determining whether PCRA trial counsel was ineffective or not is the normal Strickland standard of deficient performance coupled with prejudice. Workman v. Superintendent Albion SCI, 915 F.3d 928, 2019 WL 545563, at *4-5 (3d Cir. Feb. 12, 2019); Preston v. Superintendent Graterford SCI, 902 F.3d 365, 376-77 (3d Cir. 2018). Under this standard, we note that there is no one correct way to represent a client and counsel must have latitude to make tactical decisions. Lewis v. Mazurkiewicz, 915 F.2d at 115. See also Kauffman, 109 F.3d at 190 ("[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.").

Petitioner fails the first prong of establishing that his PCRA trial counsel, Gary Graminski, in the first PCRA proceedings, engaged in deficient performance. All of the normal rules of ineffectiveness apply under Martinez, when evaluating a claim of PCRA counsel's alleged ineffectiveness which is asserted as cause to excuse the procedural default of a claim of ineffectiveness by trial counsel, i.e., PCRA counsel is presumed effective and it is Petitioner's burden to prove otherwise. See, e.g., Murray v. Diguglielmo, CIV.A. No. 09-4960, 2016 WL

3476255, at *5 (E.D. Pa. June 27, 2016). The District Court in <u>Murray</u>, succinctly stated the applicable rules:

> In assessing the effectiveness of PCRA Counsel, the Court is "required to...assume" that PCRA Counsel "made an informed judgment call that was counsel's to make" "unless the petitioner has come forward with evidence to the contrary sufficiently probative to overcome the 'strong presumption' required by Strickland." *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996). "Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)); *see also Tok v. Glunt*, 2016 WL 721280, at *5 (E.D. Pa. 2016) ("PCRA counsel, acting as an appellate attorney, was entitled to select those issues on collateral review that he thought most likely to succeed on behalf of his client."). Thus, the Court must presume that PCRA Counsel withdrew this claim "for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

In the instant Petition, Petitioner fails to even argue, yet alone, convince the Court that the issues which his PCRA trial counsel did raise in the initial PCRA petition, were any less strong than the issues that Petitioner contends his PCRA trial counsel should have raised but did not. In fact, it is Petitioner's failure to make such an argument that necessarily results in Petitioner's failure to carry his burden to rebut the presumption of effective assistance of counsel and to show deficient performance on the part of his PCRA trial counsel in the first PCRA petition proceedings. In this regard, we note that Petitioner's PCRA counsel raised the alleged ineffectiveness of trial counsel for failing to prepare Petitioner and that his PCRA trial counsel, who was also his PCRA appellate counsel in the first PCRA proceedings, was ultimately successful in having the Superior Court vacate the PCRA trial court's judgment in part and remand the case for the PCRA trial court to conduct a hearing on the claim of whether trial counsel adequately prepared Petitioner or not. On this record Petitioner fails to show deficient performance on the part of PCRA trial counsel.

In addition, Petitioner fails to argue, yet alone establish, how he was prejudiced by PCRA trial counsel's actions in choosing the issues he chose and foregoing the issues raised by Petitioner herein. Petitioner has failed to show that the claims of trial counsel's ineffectiveness raised in Ground Five were substantial claims within the contemplation of <u>Martinez</u>. <u>Bundy v. Garman</u>, CIV.A. No. 17-3308, 2019 WL 1811007, at *15 (E.D. Pa. Feb. 26, 2019) ("The *Martinez* analysis requires the federal court to determine whether PCRA counsel was ineffective utilizing the familiar *Strickland* analysis, but evaluating prejudice by determining whether the underlying claim of ineffectiveness of trial counsel was 'substantial' utilizing the standard for granting a certificate of appealability."), *report and recommendation adopted*, 2019 WL 1787647 (E.D. Pa. Apr. 24, 2019).

In this regard we note that Petitioner's trial counsel conducted himself quite ably in that he convinced the jury that Petitioner should be acquitted of all but two counts each of sexual assault, endangering the welfare of children and corruption of minors against him.[8] Petitioner

---

[8] The Superior Court recounted the following regarding the charges that Petitioner faced:

> On August 7, 2005, K.D. arrived home and discovered her husband, [Appellant], sexually assaulting her daughter ([Appellant]'s step-daughter), H.D. (d.o.b.4/14/89). H.D. asserted that [Appellant] had been sexually assaulting her since the age of 10. Police subsequently arrested [Appellant] and charged him with 87 counts each of sexual assault and corruption of minors. Police also charged [Appellant] with 87 counts each of statutory sexual assault, involuntary deviate sexual intercourse (victim less than 16 years of age), rape by forcible compulsion, aggravated sexual assault, and endangering the welfare of children. At the preliminary hearing, the Commonwealth dismissed all but six counts of each statutory violation set forth above.

> On October 27, 2006, a jury convicted [Appellant] of the two counts each of sexual assault, endangering the welfare of children and corruption of minors.

<u>Com. v. Deep</u>, No. 966 WDA 2012, slip op. at 1 – 2, Appendix 1 (footnote omitted).

fails to argue with specificity what actions or inactions that trial counsel could have taken which persuades this court that would have created a reasonable probability of a different outcome of the trial. Surely, in light of the compelling testimony of Petitioner's then wife concerning the night she caught her husband in the act of assaulting her minor daughter, corroborated by the testimony of the victim, there is not much that any attorney could have done that would have resulted in a reasonable probability of a different outcome at the trial.

Accordingly, for all of the foregoing reasons, Petitioner fails to carry his burden to show that his PCRA counsel rendered either deficient performance or that PCRA trial counsel's actions prejudiced him. In addition, Petitioner fails to carry his burden to show a substantial question regarding trial counsel's ineffectiveness in light of the substantial evidence of his guilt.

### 2. No "substantial question" of trial counsel's ineffectiveness.

We will briefly address the sub-issues raised in Ground Five explaining why Petitioner fails to show that they raise a substantial claim of trial counsel's alleged ineffectiveness.

### a. Squires testimony

As to Petitioner's claims regarding the failure of trial counsel to attempt to suppress the testimony of Dr. Squires,[9] we assume that Petitioner objects to the fact herein as he did before the trial court, that Dr. Squires should not have been permitted to testify that the victim had a sexually transmitted disease of human papilloma virus ("HPV"). We rely on the reasoning of the trial court in its October 9, 2007 Opinion Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) in the direct appeal proceedings, slip op. at 16 - 19, attached hereto as Appendix 6,

---

[9] Dr. Janet Squires was a medical doctor and expert witness for the Commonwealth, who conducted a "sexual assault examination" of the victim and she tested the victim for the presence of any sexually transmitted diseases and found that the victim tested positive for the human papilloma virus. She testified accordingly at Petitioner's trial. Appendix 6 at 16.

wherein the trial court noted that although such information was permitted to come into evidence before the jury, such evidence was properly admitted as tending to make it more probable than not the occurrence of sexual assaults. However, the trial court went on to note that Petitioner was permitted to introduce evidence that he himself had been tested for HPV and was found not to have been infected with HPV. This evidence would apparently have permitted the jury to infer then that if Petitioner did not have the disease, but the victim did, perhaps there was no sexual contact between them. In fact, this is the very argument Petitioner raised on appeal to the Superior Court in his direct appeal brief. Brief for Appellant, Com. v. Deep, (No. 1592 WDA 2010), 2011 WL 3797799 at *19 – 20 (Pa. Super.) ("Concerning the eighth, ninth and tenth claims wherein the Appellant claims that trial counsel was ineffective at trial in failing to appropriately contest the issue of the alleged victim having a sexually transmitted disease, namely HPV. The Appellant's contention relative to the sexually transmitted disease that the alleged victim was suffering from was that since she had the disease and since the Appellant did not, then he could not have possibly been guilty of the offense since he did not contract it from her. Furthermore, the Appellant asserts that he specifically instructed his trial counsel Robert Brady to contest said issue by asking for a mistrial, making an investigation into the matter and pursuing the issue with the Appellant's then girlfriend, Andrea Linton, in that she did not have the disease either."). In its October 9, 2007 Rule 1925(b) Opinion, the trial court concluded "[o]n balance, evidence that the victim was infected with HPV tended to corroborate a matter at issue, and the introduction of that evidence did not prejudice the Defendant, under the circumstances." Appendix 6 at 19.

Based on the trial court's reasoning, we find that the claim of trial counsel's alleged ineffectiveness regarding Dr. Squires' testimony does not constitute a "substantial question" of

trial counsel's ineffectiveness within the contemplation of <u>Martinez</u> insofar as Petitioner fails to show that he was prejudiced by the introduction of this testimony as found by the trial court.

### b. Alleged **<u>Brady</u>** violation

Next, Petitioner complains that Dr. Squires violated a duty to disclose some evidence under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Apparently, the withheld evidence was photographs of the victim's hymen. As part of Petitioner's burden herein, to show a substantial question of trial counsel's ineffectiveness in this regard, he would have to make some showing that the photographs were material under <u>Brady</u>. <u>Pena v. Kerestes</u>, CIV.A. No. 15-6632, 2016 WL 8812892, at *9 (E.D. Pa. Sept. 21, 2016) ("Petitioner ignores the fact that *Brady* requires that the evidence be both exculpatory and material."), *report and recommendation adopted*, 2017 WL 1493168 (E.D. Pa. Apr. 26, 2017). Petitioner has made no such showing and its not clear that he could, given our analysis of the prejudice prong above under <u>Strickland</u> which is the same as the materiality standard under <u>Brady</u>.[10]

### c. Juror

As to the claim that counsel was ineffective with respect to the problematic juror, on this record, Petitioner simply cannot show a substantial question of prejudice under <u>Strickland</u>.

### d. State of Matters Complained of on Appeal

As to Petitioner's claim that his trial counsel was ineffective by prematurely filing a Rule 1925(b) Statement of Errors Complained of On Appeal, which allegedly prevented his direct

---

[10] <u>Cox v. Blaine</u>, CIV.A. 00-5188, 2003 WL 22238986, at *4 (E.D. Pa. July 23, 2003) ("the Third Circuit has held that the prejudice prong of *Strickland* is the same as the *Brady* materiality standard, *see Marshall v. Hendricks*, 307 F.3d 36, 85 n. 37 (3d Cir. 2002)"), <u>report and recommendation adopted sub nom., Cox v. Horn</u>, 00-5188, 2004 WL 7320193 (E.D. Pa. Aug. 11, 2004), <u>aff'd</u>, 174 F. App'x 84 (3d Cir. 2006).

appeals counsel from raising the listed claims, we find that the claims were in fact raised and were addressed. All of the 4 sub-claims, a through d, that Petitioner raises under Paragraph 5, above alleging that his trial counsel was ineffective for prematurely filing a Pa. R. App. P. 1925 (b) Statement, which he claims prevented his direct appeal counsel from raising on appeal, were in fact raised on appeal to the Superior Court by his direct appeal counsel and addressed on the merits by the Superior Court. <u>Com. v. Deep</u>, No. 736 WDA 2007 (Pa. Super.) slip op. at 3, attached hereto as Appendix 7, listing the following issues raised on appeal by Petitioner's appellate counsel:

> I. Whether the trial court erred in failing to grant [Deep] a new trial due to after-discovered evidence[?]

> II. Whether the trial court erred in admitting the improper medical diagnosis of Nurse Catherine Dames as proper expert testimony because Nurse Dames was not qualified to give such testimony[?]

> III. Whether the trial court erred in admitting evidence that the victim had a sexually transmitted disease[?]

> IV. Whether the trial court erred in failing to grant [Deep] a new trial due to prosecutorial misconduct[?]

> V. Whether the trial court erred in failing to grant [Deep] a new trial due to the Commonwealth's failure to comply with Pennsylvania Rule of Criminal Procedure 573[?]

> VI. Whether the trial court abused its discretion in sentencing [Deep] to consecutive sentences in the aggravated range[?]

The Superior Court addressed Issues I – V on the merits by adopting the trial court's disposition of these claims. <u>Id.</u> ("Based on our review of the record, we conclude that the trial court's extensive and well-written Opinion sets forth the appropriate law regarding Deep's first five claims, and correctly concludes that each claim lacks merit. We therefore affirm on the basis of the trial court's Opinion with regard to Deep's first five claims of error."). One Superior

Court judge concurred, noting that he would find Petitioner's issues waived for failing to comply with Pa. R. App. 2117(c) which requires that Petitioner state in his brief where in the record he preserved these issues for review. Id., Concurring Memorandum at 1, Appendix 7. The concurring opinion's conclusion regarding waiver did not persuade the majority.

The Superior Court did find the issue of the challenge to the discretionary aspects of the sentence to have been waived for not complying with the applicable Pennsylvania appellate rules. However, as we note below, this challenge to the discretionary aspects to Petitioner's sentence was raised by means of a claim of ineffective assistance of trial and appeal counsel for not properly preserving this claim.

The issue of the challenge to discretionary aspects of Petitioner's sentence was raised in the first PCRA proceedings, and the Superior Court found that Petitioner failed to establish any prejudice due to any deficient performance by trial counsel because any challenge to the discretionary aspects of Petitioner's sentence would have been meritless. Com. v. Deep, No. 1592 EDA 2010, slip op. at 8 – 11, Appendix 3. Specifically, the Superior Court concluded that "We conclude that Deep's sentence was not unduly harsh, considering he was convicted on, *inter alia*, two counts of sexual assault. Therefore, Deep has failed to establish that counsel's failure to preserve his challenge to the discretionary aspects of his sentence prejudiced him, and his third issue on appeal merits no relief." Id. at 10 -11.

Accordingly, for all of the foregoing reasons, Ground Five fails to merit federal habeas relief.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). The Court

concludes that jurists of reason would not find it debatable whether the Petitioner made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability will be denied.

## VI. CONCLUSION

For the reasons set forth herein, the Petition will be denied and a certificate of appealability will be denied.

## ORDER

**AND NOW,** this 25th day of February 2020, it is hereby **ORDERED** that for the reasons set forth herein, the Petition is **DENIED**. Because we conclude that jurists of reason would not find the foregoing debatable, a certificate of appealability is likewise **DENIED**.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATE MAGISTRATE JUDGE

cc:    All counsel of record via CM-ECF

MICHAEL DEEP
HA1444
SCI SOMERSET
1600 Walters Mill Road
Somerset, PA 15510

MICHAEL DEEP
HA1444
SCI Laurel Highlands
5706 Glades Pike
P.O. Box 631
Somerset, PA  15501